UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:18cr5 |
| | ) | |
| JUDITH WRIGHT | ) | Hon. Elizabeth K. Dillon |

### SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE IN LIGHT OF COVID-19 PANDEMIC

Ms. Wright, through the undersigned counsel, now files this Supplemental Motion for Compassionate Release based on the risk posed to her from the COVID-19 virus. Specifically, Ms. Wright's conditions—HIV and asthma—place her at a greater risk for serious complications resulting from the virus. Ms. Wright is also at increased risk of contracting COVID-19 given the widespread COVID-19 outbreak in Bureau of Prisons. Ms. Wright has exhausted her administrative remedies, and the section 3553(a) factors support her release. This Court should release her without delay.

### INTRODUCTION

By now, this Court is unfortunately familiar with the impact of the Covid-19 virus. There are over 2.6 million cases in the United States, and over one hundred and twenty-seven thousand people in this country have died.[1] In Virginia alone, there are more than 63,000 cases and almost 1,800 deaths.[2] . We have been told by

---

[1] https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html (last visited July 1, 2020).
[2] https://www.vdh.virginia.gov/coronavirus/ (last visited July 1, 2020).

the authorities to stay home, stay safe, and not be closer than six feet to anyone. Older persons, persons with weakened immune systems and those with underlying health problems need to take ever greater precautions because of the dangerous aspects of this particular virus.

By this emergency motion, Mr. Wright seeks immediate release from FCI Greenville to serve the remainder of her custodial term in home detention. She seeks this relief pursuant to 18 U.S.C. § 3582, as modified by the First Step Act, and do so in order to protect her Eighth Amendment and Due Process rights. As discussed more fully below, Ms. Wright's health profile matches those who are commonly identified as at risk of contracting and suffering the most severe health consequences – hospitalization or death.

Mr. Wright suffers from asthma and is HIV positive, both of which place her of increased risk from COVID-19. *See* Ex. A, excerpts of medical records (filed under seal). In addition, she has an as-yet undetermined thyroid disorder which has caused thyroid nodules to form. While these nodules are benign, they may lead to further complications if they compromise her thyroid functioning.[3]

Ms. Wright is currently incarcerated at FCI Greenville. Greenville is a medium security prison in Illinois housing 994 inmates, with a minimum security satellite camp, currently housing 257 prisoners.[4] Ms. Wright is housed at the camp.

---

[3] *See* https://www.mayoclinic.org/diseases-conditions/thyroid-nodules/symptoms-causes/syc-20355262#:~:text=Hashimoto's%20disease%2C%20a%20thyroid%20disorder,deficiency%20or%20a%20thyroid%20disorder.
[4] https://www.bop.gov/locations/institutions/gre/.

2

FCI Greenville has reported a positive COVID-19 case in an inmate, but is not reporting current COVID-19 cases.[5] While BOP reports that the case at Greenville has "recovered," there is reason to doubt that "recovery" is as definitive as it might appear on paper. For example, an inmate at FCI Terminal Island who had tested positive in April, and then been listed as "recovered," died on May 24.[6] This unfortunately squares with the data regarding death rates in BOP: while the number of confirmed positive inmates has hovered between 1,200 and 2,000 and the number of "recovered" inmates has risen, the number of inmate deaths has also continued to rise.[7]



---

[5] https://www.bop.gov/coronavirus/ (last visited July 1, 2020).
[6] Brooke Wolford, "Inmate who 'recovered' from coronavirus dies in California prison, officials say," *The Sacramento Bee*, May 28, 2020, available at https://www.sacbee.com/news/coronavirus/article243076476.html.
[7] Chart created by the Federal Defenders of New York. https://federaldefendersny.org/ (last visited June 29, 2020).

3

While the rest of the country takes tentative steps toward reopening, the situation within BOP remains dangerous, with over fifteen hundred active cases among inmates and staff.[8] And the absence of current cases in a facility is no guarantee of its safety. For example, on March 29, 2020, there were no cases at FCI Forrest City Low or FCI Elkton.[9] By April 11, there were 26 inmate cases at FCI Forest City Low and 10 inmate cases at Elkton FCI.[10] By May 2, those numbers had shot up, to 461 inmate cases at FCI Forest City Low and 429 cases at FCI Elkton.[11]

In addition, there is reason to question the BOP's reporting of cases. To take only one example, there were 1 inmate case and 7 staff cases reported at FCI Ray Brook on April 11.[12] On April 19, local press reported that six corrections officers and six inmates at FCI Ray Brook had the virus,[13] but the BOP reported no cases at all there.[14] On May 14, after the BOP began reporting the numbers of "recovered" inmates and staff, it reported that 11 inmates and 9 staff had recovered at FCI Ray Brook. Given the continued lack of widespread testing and the ease with which the virus spreads through asymptomatic or mildly symptomatic carriers, it is difficult to determine the true number of cases in an institution where the virus has circulated.

---

[8] https://www.bop.gov/coronavirus/ (last visited June 29, 2020).
[9] https://web.archive.org/web/20200329223908/https://www.bop.gov/coronavirus/
[10] https://web.archive.org/web/20200411150943/https://www.bop.gov/coronavirus/
[11] https://web.archive.org/web/20200502073139/https://www.bop.gov/coronavirus/ .
[12] *See* note 12, *supra.*
[13] "Seven inmates now ill with COVID-19 in Essex County," *North County Public Radio,* Apr. 19, 2020, available at https://www.northcountrypublicradio.org/news/story/41193/20200419/seven-inmates-now-ill-with-covid-19-in-essex-county
[14] https://web.archive.org/web/20200419165217/https://www.bop.gov/coronavirus/

The consequences of that inability to control the spread of the disease are clear. On April 3, the government opposed release in another case in this district, for an inmate at FCI Butner, citing all of the BOP's COVID-19 policies, such as screening, visitation lockdown, and social distancing, as being sufficient to prevent the spread of COVID-19 within Butner. *See United States v. Rumley*, No. 08-cr-5, Dkt. 185, at 4–7 (W.D. Va. Apr. 3, 2020). Despite those precautions, the inmate in question, Mr. Rumley, has now tested positive for COVID-19. *See Rumley*, No. 08-cr-5, Dkt. 202.

Indeed, a leading epidemiologist from John Hopkins University, Dr. Chris Beyrer, has stated under oath regarding COVID-19 that the "fatality rate is . . . above 5% (1 in 20 cases) for those with pre-existing medical conditions including cardio-vascular disease, *respiratory disease*, diabetes, and *immune compromise*." (Declaration of Chris Beyrer, MD, MPH, in Support of Persons in Detention and Detention Staff, COVID-19, (hereinafter "Beyrer Decl."), attached hereto as Ex. B, at ¶ 6) (emphasis added).

As of December 2018, Congress invested this Court with the power and duty to consider reducing a limited number of its previous sentences where extraordinary circumstances, not foreseen at the time of sentencing, make such reconsiderations appropriate. Now, Section 3582(c)(1)(A) of Title 18 permits a defendant to file directly with the Court a motion seeking reduction of his or her sentence for extraordinary and compelling reasons if: (1) the defendant has fully exhausted his administrative remedies or (2) there has been a lapse of 30 days from the warden's

receipt of the defendant's request, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A)(i). No longer is the Court divested of jurisdiction after sentencing a defendant. Upon the proper showing and in light of extraordinary circumstances this Court is permitted to release an inmate. Accordingly, upon consideration of Ms. Wright's extraordinary and compelling showing below, this Court should act quickly and decisively to release him from custody and permit her to serve the remainder of her sentence in strict home detention in order to protect her health and rights.

Ms. Wright has two conditions that correlate to significantly worse outcomes from COVID. *See* Ex. A. Like every person in this country, Ms. Wright is in danger of contracting a pernicious, aggressive life-threatening infection—the COVID-19 virus. Unlike most people in this country, however, she has no way to practice the social distancing and sheltered protective measures that are mandated by governments and health officials throughout the nation and which promise some hope of surviving the consequences of infection. Indeed, she is prevented from such practices due to the living conditions in which she is incarcerated. In her *pro se* motion, she describes the close quarters in which she and many other women are confined. And if she contracts the virus, her pre-existing medical conditions significantly increase the risk that severe complications, including death, will result.

Mr. Wright made a request for compassionate release to the warden of FCI Greenville on March 27, 2020, seeking release because of her asthma and HIV and the COVID-19 epidemic; she supplemented it on March 31. That request was

denied on April 21, 2020. *See* exhibits to sealed *pro se* motion. She filed a supplement to that request providing detailed release plans on May 6, 2020; as of July 1, 2020, she has not yet received a response to her May 6 supplement. Thirty days from the date of the request have now run, and accordingly, Ms. Wright has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A).

I.  **Extraordinary and compelling reasons warrant a reduction of Ms. Wright's sentence under the First Step Act**

Under the First Step Act, courts may grant the direct request of prisoners to reduce their sentences if "extraordinary and compelling reasons" warrant such a reduction. See First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)). Courts in this district have used this authority to make such sentencing reductions in the context of the COVID-19 outbreak, finding "extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Harper*, No. 7:18-CR-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (Dillon) citing *United States v. Feiling,* Criminal No. 3:19cr112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020); *United States v. Dungee*, Case No. 7:15CR00005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020). The present case presents a perfect example of such "extraordinary and compelling reasons" as Ms. Wright's underlying health conditions put her at a particular risk from COVID-19, and her incarceration in Bureau of Prisons puts

7

her a particularized risk of suffering its consequences.

### A. Ms. Wright is particularly susceptible to COVID-19

Ms. Wright suffers from multiple conditions that put her at an especially grave risk of harm. The Centers for Disease Control have recognized that people with moderate to severe asthma or who are immunocompromised due to HIV "might be at an increased risk for severe illness from COVID-19."[15]

Asthma has been connected to more severe cases of COVID-19 in multiple studies. One study suggests that asthma increases the risk of hospitalization among adults aged 18-49.[16] Another recent study from Rush University Medical Center noted that COVID-19 patients with asthma tend to require longer periods of time on ventilators. *See* Ex. C. Finally, a large-scale study from the UK found that certain kinds of asthma could increase the risk of severe COVID-19 cases by as much as 48 percent.[17]

Numerous courts have also recognized the risk posed by COVID-19 to asthma sufferers. *See United States v. Mahan*, -- F. Supp. 3d --, 2020 WL 1846789

---

[15] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 1, 2020)

[16] Garg S, Kim L, Whitaker M, et al. Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019 — COVID-NET, 14 States, March 1–30, 2020. MMWR Morb Mortal Wkly Rep 2020;69:458–464.
DOI: **http://dx.doi.org/10.15585/mmwr.mm6915e3**

[17] https://www.hsph.harvard.edu/news/features/non-allergic-asthma-linked-with-increased-risk-of-severe-covid-19/

(D. Idaho Apr. 10, 2020) (granting pretrial release to inmate with moderate asthma based on risk posed by COVID-19); *United States v. Williams*, 3:17-CR-121-(VAB)-1, 2020 WL 1974372 (D. Conn. Apr. 24, 2020) (granting compassionate release to a defendant with asthma, hypertension, a history of kidney issues, and other medical conditions); *United States v. Gorai*, 2:18-cr-00220-JCM-CWH-1, 2020 WL 1975372 (D. Nev. Apr. 24, 2020) (granting compassionate release to a 34-year-old defendant with asthma as the only listed medical condition); *United States v. Park*, 16-cr-473 (RA), 2020 WL 1970603 (S.D. N.Y. Apr. 24, 2020) (granting compassionate release to a 44-year-old defendant with asthma).

This Court recently recognized that a defendant with multiple health conditions including heart disease, asthma, hypertension, and sleep apnea qualified for compassionate release, nothing that he had shown a particularized susceptibility to the disease and a particular risk of contracting it in his BOP facility. *United States v. Harper*, 7:18cr25, ECF 64 (W.D. Va. Apr. 28, 2020).

Similarly, individuals with HIV are at greater risk from COVID because of their immunocompromised state. "COVID-19 makes certain populations of people severely ill… [C]ertain medical conditions increase the risk of serious COVID-19 for people of any age. These medical conditions include those . . . [who are] immunocompromised (such as from cancer, HIV, autoimmune diseases)." Ex. D, Golob Declaration ¶ 3. "Most people in the higher risk categories" who contract the virus "will require more advanced support" including mechanical ventilators and a

9

team of specialized care providers. "This level of support can quickly exceed local health care resources." *Id.* ¶ 6.

A recent study from South Africa, which has the highest rate of HIV infection in the world, and which reviewed outcomes for almost 13,000 COVID-19 patients, found that HIV increased a COVID-19 patient's risk of death by a factor of 2.75.[18] While this increase is not as substantial as that caused by some other COVID-19 risk factors, it does present a significant risk.

Courts considering the impacts of COVID-19 have recognized as much. One district court recently noted that it is undisputed that persons with HIV or AIDS are among those "most susceptible to developing serious medical complications from the infection." *Benavides v. Gartland*, No. 5:20-CV-46, 2020 WL 1914916, at *2 (S.D. Ga. Apr. 18, 2020) (citing CDC guidance from April 2019); *United States v. Mason*, CAUSE NO. 3:17-CR-104-CWR-LRA-3, ECF 63 (S.D. Miss. Jun. 9, 2020) (granting compassionate release to an inmate with asthma and HIV). *See also* Max Bearak & Joanna Slater, Among the most vulnerable to coronavirus: The tens of millions who carry HIV and tuberculosis, Wash. Post, Apr. 9, 2020.

Ms. Wright thus has two serious health conditions that place her at risk. Under normal, pre-COVID-19 circumstances, both would be manageable in a prison setting with careful monitoring and prompt attention. Under the present circumstances, however, Ms. Wright faces a serious risk of grave illness and death

---

[18] https://www.sciencemag.org/news/2020/06/hiv-and-tb-increase-death-risk-covid-19-study-finds-not-much

because of the impact of a COVID-19 infection on someone with her preexisting conditions.

*B. Mr. Wright is at particular risk of COVID-19 at FCI Greenville*

The COVID-19 virus has spread with alarming ease within BOP facilities, despite efforts by the BOP to check its progress. Currently, the infection rate within BOP is almost six times the national infection rate within the United States. *See* table, below.[19]



The BOP is reporting only 1 "recovered" case at FCI Greenville, but the ease with which the virus has spread throughout BOP facilities strongly suggests that a low current case load is no guarantee of safety. Courts have recognized as much: in *United States v. Feucht,* -- F. Supp. 3d --, 2020 WL 2781600 (S.D. Fla. May 28, 2020), the court recognized that "zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases" at FCI Jesup, where the defendant was housed, and granted compassionate release. *See also United States v. Atkinson*, No. 2:19-CR-55

---

[19] *See* https://federaldefendersny.org/ (last visited June 30, 2020)

JCM (CWH), 2020 WL 1904585, *2-4 (D. Nev. Apr. 17, 2020) (granting compassionate release to the defendant, notwithstanding that FCP Atwater where he was housed had seen no cases of COVID-19 because the realities of prison life made it impossible for medically vulnerable inmates like Mr. Atkinson to follow CDC guidelines to protect themselves in the face of COVID-19); *United States v. Amarrah*, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (releasing medically vulnerable inmate from FCI Loretto, despite no reported COVID-19 cases at the facility, because he could not adequately protect himself in line with CDC guideline); *United States v. Regas*, No. 391CR00057MMDNA1, 2020 WL 2926457, at *3 (D. Nev. June 3, 2020) ("The fact that there are no confirmed COVID-19 cases at Herlong is not reassuring, given that there is no facility-wide testing[.]"); *United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020) ("Federal correctional institutions, which had reported zero COVID-19 cases only weeks ago, and despite the steps the BOP has taken to contain the disease within its facilities, are now reporting numerous virus-related deaths.") (citations omitted).

The lack of widespread testing at FCI Greenville underlines these concerns. Although the medium security prison and the camp together hold 1,251 inmates, only 106 tests have been conducted.[20] Thus, while one positive inmate was identified, the lack of testing for more than ninety percent of the population at the

---

[20] https://www.bop.gov/coronavirus/ (last visited July 1, 2020). The BOP also notes that the number of tests conducted is not equal to the number of inmates tested, since some inmates may have been tested more than once.

prison makes it impossible to say that COVID-19 has been contained there. Ms. Wright remains at particular risk from contracting COVID-19 while being held by the Bureau of Prisons.

**II. A sentence of time served is sufficient to accomplish the goals of sentencing**

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Under all of the circumstances in this case, the Court should conclude that the time that Ms. Wright has already served is sufficient to satisfy the purposes of sentencing. Under *Pepper v. United States*, 562 U.S. 476, 492 (2011), the Court can, and indeed must, consider "the most up-to-date picture" of the defendant's history and characteristics, which "sheds light on the likelihood that [the defendant] will engage in future criminal conduct."

Here, the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents. Although the circumstances of the present offense qualified Ms. Wright for the serious sentence that this Court originally imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness or permanent disability. Ms. Wright is at grave risk should she remain incarcerated, and she should have the benefit of social distancing in an environment that avoids the direct risk of COVID-19 exposure she currently faces.

Ms. Wright is not a danger to the community. Her only countable criminal history prior to this conviction consists of a single shoplifting misdemeanor for stealing cleaning supplies. PSR ¶ 44. While she participated in the conspiracy in this case, the PSR identified her as a street level dealer and courier, who was paid to drive to California to pick up drugs, and whose compensation for the use of her apartment was free dinners and other entertainment. PSR ¶ 28. Since her time in Bureau of Prisons, she has completed drug education and is on the waiting list for drug treatment. Ex. E. Unfortunately, due to the COVID-19 crisis, Ms. Wright reports that drug treatment programs and other educational programing are currently suspended at FCI Greenville. Given the uncertain duration of the pandemic and BOP's evolving response to it, it is unclear when those programs can safely resume.

Ms. Wright has had no infractions or discipline within BOP, and she is classified as presenting a low risk of recidivism and a minimum security classification. *Id.* She earned her GED while in BOP and completed her financial requirements. *Id.*

Although she has not yet passed the halfway point in her sentence, that fact does not bar her from compassionate release. Indeed, courts have granted it in cases where defendants have served a far smaller percentage of their sentence than Ms. Wright has. For example, in *United States v. Delgado*, -- F. Supp. 3d --, 2020 WL 2464685 (D. Ct. Apr. 30, 2020), the court granted compassionate release to a

14

defendant who had served approximately 29 months of a 120 month sentence for distribution of over 5 kilograms of cocaine under 21 U.S.C. § 841(b)(1)(A).

Ms. Wright has a reasonable release plan. As described in her *pro se* motion, she has a place to live with her grandmother, a plan for her healthcare, and a family member who is willing to pick her up upon release.

By the same token, Ms. Wright asks the Court to permit her to spend any 14 day quarantine period upon release in home detention, rather than in Bureau of Prisons. As the government recently admitted in another case in this district, *United States v. Stevens*, inmates like Ms. Wright have been in "effective quarantine" for weeks now in Bureau of Prisons. Several judges in this district have now released defendants to self-quarantine at home. *See, e.g., United States v. Stevens*, 1:08-cr-15 (Order May 6, 2020); *United States v. Tinsley*, No. 3:12-cr-20 (Order April 28, 2020); *United States v. Harper*, No. 7:18-cr-25 (Order April 28, 2020); *United States v. McLendon*, 3:17cr1 (Order June 22, 2020). Ms. Wright should be similarly permitted to self quarantine in her own home.

### Conclusion

For these reasons, Ms. Wright asks this Court to enter an order granting her immediate release on conditions of home detention and reducing her sentence to time served. Extraordinary and compelling reasons warrant reduction of Ms. Wright's sentence, as both her underlying health conditions and the situation in BOP put her at grave risk from COVID-19. A sentence of time served, followed by a period of home detention for the remainder of her incarceration, is sufficient but not greater than necessary to meet the goals of sentencing.

Respectfully submitted,

JUDITH WRIGHT
By counsel

Counsel:
/s/ Erin Trodden
Erin Trodden
Asst. Federal Public Defender VSB 71515
116 N. Main St., Room 305
Harrisonburg, VA 22802
Tel (434) 220-3396
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

/s/ Erin Trodden